Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Glen Tharp*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Glen Tharp,<br><br>              Plaintiff,<br><br>       v.<br><br>Sun Life Assurance Company of Canada;<br>Education Affiliates, Inc.; Education Affiliates,<br>Inc. Employee Benefit Plan,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Glen Tharp (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. At all times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Education Affiliates, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group short-term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Sun Life Assurance Company of Canada (hereinafter referred to as "Sun Life"). The specific group disability policy is known as Group Policy No.: 246472-004. The Company's purpose in purchasing the Policy was to provide short-term disability insurance for its employees.

4. Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the Education Affiliates, Inc. Employee Benefit Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.

5. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

6. Upon information and belief, Sun Life functioned as the claim administrator of the Plan and Policy. However, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Sun Life.

7. Sun Life operated under a financial conflict of interest in fully insuring and administering Plaintiff's short-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

8. Sun Life's conflict of interest existed and manifested in that if it found Plaintiff was disabled, it was then financially liable for the payment of his short-term disability benefits.

9. The Company, Sun Life and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

10. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

11. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).

12. Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits he may be entitled to from the Plan, any other Company Plan and/or the Company as a result of being found disabled in this action.

13. After working for the Company as a loyal employee in the occupation of a Regional VP, Campus President, Plaintiff became disabled from working in that occupation, and also in any occupation, on or about April 4, 2017.

14. Following the onset of his disability, Plaintiff filed a claim for short-term disability benefits under the relevant Policy, which was administered by Sun Life. Sun Life made every decision in Plaintiff's short-term disability claim, which was to deny it.

15. Plaintiff was unrepresented throughout the entirety of Sun Life's administrative review of his short-term disability claim.

16. Upon information and belief, the relevant Sun Life Policy's definition of disability governing Plaintiff's short-term disability claim is as follows:

"Total Disability and Totally Disabled means you are unable, by reason of Accident or Sickness, to perform each and every duty pertaining to your Regular Occupation."

17. In support of his claim for short-term disability benefits, Plaintiff submitted to Sun Life medical and other evidence which supported his allegation that he met the definition of disability defined in the relevant Policy.

18. Plaintiff submitted to Sun Life one of its own medical questionnaires dated March 14, 2017, which was completed by his board certified treating physician who marked, "No" when asked, "is patient capable of working with these restrictions/limitations" and added, "Patient is disabled…should not work."

19. Further supporting his claim, Plaintiff submitted to Sun Life an April 24, 2017 office visits/medical record from the same treating physician who wrote, "[Plaintiff] was finally in agreement to take time off."

20. In a letter dated July 11, 2017, in spite of the evidence Plaintiff submitted which proved he was disabled pursuant the definition of disability in Policy and was entitled to benefits, Sun Life informed Plaintiff it was denying his claim for short-term disability benefits.

21. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Sun Life's July 11, 2017 denial of his claim.

22. As part of its review of Plaintiff's claim for short-term disability benefits, Sun Life obtained a medical records only "paper review" from a medical professional of its choosing, Barry Klegman, M.D.

23. Upon information and belief, Plaintiff asserts Dr. Klegman is a long time medical consultant for Sun Life and/or the disability insurance industry. As a result, Dr. Klegman has a conflict of interest and an incentive to protect his own consulting relationship with Sun Life, and/or the disability insurance industry by providing medical

records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and that unreasonably supported the denial of Plaintiff's claim.

24. Prior to rendering its August 24, 2017 final denial in Plaintiff's claim, Sun Life unlawfully never shared with an unrepresented Plaintiff, or his treating medical professionals (critically, who opined he was disabled and unable to work), the medical records only "paper review" authored by Dr. Klegman, so they could respond to the report by addressing any issues and/or deficiencies Sun Life believed were present in Plaintiff's claim.

25. Sun Life's failure to provide an unrepresented Plaintiff and his treating medical professionals with its doctor's report before issuing its final denial was not the action of a fiduciary, because it precluded a "full and fair" review pursuant to ERISA. This failure by Sun Life precluded Plaintiff from curing any alleged deficiencies Sun Life believed existed in his claim. The alleged deficiencies were not inconsequential; Sun Life relied on Dr. Klegman's opinions and rationales to deny Plaintiff's claim.

26. Sun Life's total failure to act as Plaintiff's ERISA fiduciary, when it knew he was unrepresented throughout the entirety of its review, by not providing its doctor's report to Plaintiff during his appeal precluded him from being able to perfect and prove his claim pursuant to ERISA.

27. Sun Life's failure to provide an unrepresented Plaintiff and his treating medical professionals with the opportunity to respond to Dr. Klegman's report is an ERISA procedural violation, and precluded Sun Life from providing Plaintiff with a "full and fair" review as required by ERISA. Sun Life's actions also violated Ninth Circuit case law as the Court held in *Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 680 (9th Cir. 2011):

"The plan evidently based its denial in large part on review of Salomaa's file by two physicians, one for the first denial, *another for the final denial*. They both wrote their appraisals for the plan administrator. Yet the plan failed to furnish their letters to Salomaa or his lawyer. The regulation, quoted above, requires an ERISA plan to furnish 'all documents, records, and other information relevant for benefits to the claimant.' *A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement*" (emphasis added).

28. In Sun Life's final denial letter dated August 24, 2017, notwithstanding Plaintiff's aforementioned evidence which proved he met the definition of disability in the Policy, Sun Life notified him that it was upholding its denial of his short-term disability claim.

29. In its denial letter dated August 24, 2017, Sun Life notified Plaintiff he had exhausted his administrative levels of review and that he could file a civil action lawsuit in federal court pursuant to ERISA.

30. Sun Life's August 24, 2017 final denial letter is clear evidence that it breached its ERISA fiduciary duty to Plaintiff and failed to provide a "full and fair review," as required by ERISA. During its review, Sun Life either negligently or intentionally committed numerous ERISA procedural violations as identified herein which allowed Sun Life to deny Plaintiff's claim even though ERISA's regulations were enacted to protect individual's rights, such as Plaintiff's.

31. Sun Life's ERISA violations include but are not limited to, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence which proved he met the definition of disability in the Policy, and failing to provide its medical reviewer's report to Plaintiff and his medical professionals during his appeal, and at a time when it mattered and they could respond to them, which was prior to when Sun Life issued its final denial on August 24, 2017.

32. In evaluating Plaintiff's claim on appeal, Sun Life owed him a fiduciary duty and had an obligation pursuant to ERISA to administer it, "solely in [his] best interests and other participants" which it failed to do. [1]

33. Sun Life failed to adequately investigate and failed to engage Plaintiff, who was unrepresented, in a dialogue during the appeal of his claim with regard to what evidence was necessary so Plaintiff could perfect his claim/appeal in order to prove that he is disabled as that term is defined in the Policy. Sun Life's failure to investigate the claim and to engage in this dialogue, and failure to ask for and/or obtain the evidence it believed was necessary and critical to cure any deficiencies so Plaintiff could perfect his claim, is particularly egregious given that Plaintiff was unrepresented during the administrative review of his claim, as well as the nature and severity of Plaintiff's disabling medical conditions.

34. Sun Life's failure to engage in a dialogue is evidence that its denial of Plaintiff's claim was motivated by its financial conflict of interest, it is also an ERISA procedural violation which also violates Ninth Circuit case law and is evidence that he did not receive a "full and fair" review.

35. Plaintiff asserts Sun Life provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; by failing to have Plaintiff's claim reviewed by a truly independent medical professional; by failing to obtain an in-person evaluation of Plaintiff,

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

when the Policy allowed for one and Plaintiff's disabling medical conditions, as well as the resulting symptoms and functioning work limitations they created for him, could not be easily understood with only a medical records "paper review," which raises legitimate questions about the thoroughness and accuracy of its review and denials; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical and other evidence which supported Plaintiff's claim; by disregarding and/or failing to consider Plaintiff's disabling subjective and self-reported complaints/symptoms/limitations; by failing to consider the combined effect that all of his medical conditions and resulting limitations documented in his medical evidence would have on his ability to work in any occupation; by failing to engage Plaintiff in a dialogue so he and his medical professionals could respond to Sun Life's reviewing medical professional's (Dr. Klegman) report by submitting the necessary evidence to perfect his claim so he could prove he is "Totally Disabled" as that term is defined in the Policy, and by failing to consider the impact the side effects that Plaintiff's medications would have on his ability to engage in any occupation.

36. Plaintiff asserts a reason Sun Life provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its financial conflict of interest that manifested as a result of the dual roles Sun Life undertook as the decision maker and the payor of benefits. Sun Life's conflict of interest provided it with a financial incentive to deny Plaintiff's short-term disability claim.

37. Sun Life's conflict of interest manifested when it denied Plaintiff's claim because due to its denial of his claim, Sun Life saved *tens of thousands of dollars* in disability benefits that it did not have to pay Plaintiff, even though he is legally entitled to them.

38. Plaintiff is entitled to discovery regarding Sun Life's aforementioned conflicts of interest referenced herein, as well as of any third party vendor hired by Sun Life, and of

any medical professional retained by a third party vendor to review Plaintiff's claim. In addition, Plaintiff is entitled to discovery regarding the conflicts of interest of *any* individual, medical professional or otherwise, who reviewed his medical evidence or claim.

39. The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Sun Life's decision to deny his short-term disability claim.

40. Plaintiff asserts the standard of review for the Court to apply is de novo, as the Policy was issued in Maryland, where the Company is headquartered, and Maryland banned discretionary clauses in disability policies in 2013 (*See* MD Ins Code § 12-211 (2013)) (prior to the final denial in Plaintiff's claim). The final denial in Plaintiff's claim was made on August 24, 2017, after the Maryland statute went into effect.

41. In denying his claim, Plaintiff alleges Sun Life failed to provide a full and fair review pursuant to ERISA, and that its denial of his short-term disability claim is a *de novo* wrong decision, because his evidence proves that he met the definition of disability in the Policy.

42. If the Court concludes the Policy confers discretion and the standard of review is for abuse of discretion, Plaintiff asserts that Sun Life's decision which resulted from its financial conflict of interest and its numerous unlawful ERISA violations as referenced herein, constitutes an abuse of discretion. Plaintiff also asserts that in denying Plaintiff's claim, Sun Life did not provide a "full and fair" review as required by law and its ERISA violations are so flagrant they justify *de novo* review. Regardless of the standard of review, Plaintiff is entitled to discovery regarding the conflicts of interest, bias and ERISA procedural violations referenced herein.

43. As a direct result of Sun Life's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost short-term and long-term

disability benefits, in addition to other potential non-disability employee benefits he may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled in this matter. Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health insurance (coverage) and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents. Plaintiff seeks any and all employee benefits, and/or any other benefits he may be due from Defendants as a result of being found disabled in this matter.

44. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid short-term disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

45. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order finding that the evidence in Plaintiff's claim is sufficient to prove he met the definition of disability set forth in the relevant Plan and/or Policy and that he is entitled to disability benefits, and any other non-disability employee benefits that he may be entitled to as a result of that Order, from the date he was first entitled to but denied these benefits through the date of judgment with prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such a time as he meets the conditions for the termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.   For such other and further relief as the Court deems just and proper.

DATED this 17th day of April, 2018.

SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
Scott E. Davis
Attorney for Plaintiff